IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

October 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

MACK MULLINS,                    ) C/A NO. 03A01-9705-CH-00153
                                 )
            Appellant,           ) HAMBLIN CHANCERY
                                 )
v.                               ) HON. THOMAS R. FRIERSON, II,
                                 ) CHANCELLOR
LILLIAN J. MULLINS,              )
                                 ) AFFIRMED AND
            Appellee.            ) REMANDED


PAUL G. WHETSTONE, P.C., Morristown, for Appellant.

J. RANDALL SHELTON, Morristown, for Appellee.


**O P I N I O N**


Franks, J.


In this divorce action, both husband and wife have raised issues on appeal.

The husband insists that it was improper for the Trial Judge to order the husband to pay the wife's COBRA insurance premiums and to pay a portion of her attorney's fees, since the parties had announced to the Court that the wife would not seek alimony.

The divorce case was tried on October 21, 1996, and the parties

stipulated grounds for divorce pursuant to T.C.A. § 36-4-129. The wife's Counter-Complaint initially asked for alimony *in solido*, alimony *in futuro*, and temporary spousal support. The husband's counsel in his Opening Statement informed the Court that the parties had agreed that the wife would not seek alimony. Husband's counsel was aware that the wife was seeking attorney's fees and objected to any such award. In the Court's Decree, the husband was required to pay COBRA premiums on behalf of the wife for twenty-four months and to pay a portion of her attorney's fees in the amount of $500.00. The Chancellor also determined that the marital residence, including the value of Lillian Mullins' down payment of $18,000.00 was marital property. The Chancellor determined that $60,000.00 of net equity existed in the home and the wife was awarded the property, but she was required to pay $12,969.00 to the husband for his interest.

In awarding the COBRA payments, the chancellor "interpreted counsel's representations to mean that both parties waived any request for periodic or *in solido* alimony, but the other issues of attorney's fees and maintenance of COBRA health insurance remained in a contested status". The parties' representations made at trial lend support to the Chancellor's interpretation.

The appellant argues the Chancellor's award of attorney's fees was improper because the issue of alimony was waived, and he notes that attorney fee awards are treated as alimony. *Gilliam v Gilliam*, 776 S.W.2d 81, 86 (Tenn.App. 1988), and in deciding whether to award attorney's fees, the trial court should generally consult the same statutory factors used in determining alimony awards. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn.App. 1992); *See* Tenn. Code Ann. §36-5-101(d)(1) (1996).

The attorney for husband in his opening statement said: "The Court of Appeals has opined time and time again that that's just another form of alimony, and I

2

don't think that ought to apply if he's not seeking alimony." He also stated that "[W]e will object to the payment of any attorney fees."

During trial, the wife testified as to the amount of fees incurred and her inability to pay. She was cross-examined on this issue, and based on the conduct of both parties, the Chancellor properly determined that the issue of attorney's fees was a contested issue for trial. The parties conduct demonstrates that the waiver was not intended to apply to attorney's fees. *Accord, Dover v. Dover*, 821 S.W.2d 593, 595 (Tenn.App. 1991). (A Court may award attorney's fees for the spouse's attorney who acts to protect the party's economic interest).

The husband cites our opinion in *Kemp v. Kemp*, 1988 WL 116368 at *3 (Tenn.App.) that COBRA coverage "is additional alimony".

The husband did not object when the wife requested COBRA coverage. The husband testified that he had calculated the cost of providing COBRA coverage and the wife testified that she was willing to give up some of her equity in other assets to balance the COBRA coverage. The Chancellor properly concluded that this issue remained contested. These issues are resolved against the husband.

The wife questions the propriety of the distribution of the marital estate by the Chancellor.

The Chancellor properly determined that the wife's premarital funds were part of the marital estate. This jurisdiction "is a 'dual property' jurisdiction because its divorce statutes draw a distinction between marital and separate property." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn.App. 1988). The Chancellor determined that the home, including the value of the wife's pre-marital investment, was marital property. The Chancellor said that "[b]y means of transmutation, a rebuttal presumption has arisen that Mrs. Mullins intended a gift to the marital estate." The record supports the Chancellor's determination that transmutation occurred.

3

Several cases have applied the doctrine. *Batson v. Batson*, 769 S.W.2d 849 (Tenn. App. 1988); *McClellan v. McClellan*, 873 S.W.2d 350 (Tenn. App. 1994); *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn. App. 1991).

In this case, the property was placed solely in the wife's name. An integral part of the doctrine of transmutation is the intent of the parties. *See Batson*. There is ample evidence to support the presumption that the wife intended the home to be a gift to the marriage. The parties were cohabitating at the time of purchase. Although cohabitation may not alone be sufficient to invoke transmutation, the parties looked for a house together and jointly made the decision to purchase the home. Moreover, the October 1, 1980 realty contract lists both parties as buyers, which suggests the parties viewed the purchase as a joint enterprise. The parties apparently believed that the Appellant's previous bankruptcy would hinder obtaining financing if his name was included as a purchaser. Thus, the Chancellor concluded that the wife's purpose in taking sole title to the home was not to keep it as separate property, but to obtain financing more easily. The evidence does not preponderate against the Chancellor's finding.

The wife also claims that the Chancellor erred in not dividing the $3,762.00 cash value of the husband's $50,000.00 American Income life insurance policy. We can find no basis in the record to disturb the Chancellor's awarding the life insurance to the husband. *See Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn.App. 1995); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn.App. 1993). We generally do not disturb a trial court's division unless "the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements and procedures." *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn.App. 1990). No such error appears in the record.

The judgment of the Trial Court is affirmed and the cause remanded,

with the cost of the appeal assessed one-half to each party.

_____
Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
Hon. William H. Inman, Sr.J.

5